869 F.2d 1493
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert K. TIDESWELL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-1087.
 United States Court of Appeals, Sixth Circuit.
 March 3, 1989.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Robert Tideswell appeals the denial of disability benefits by the Secretary. He claims that his back ailment qualifies him as disabled under the listing of impairments and/or other regulations, and that the ALJ failed to show that there are jobs available in the national economy which he is able to perform. We affirm.
 
 
 2
 * Tideswell is a fifty-year-old man residing in Farwell, Michigan. He filed for benefits on October 17, 1985, alleging that he became disabled on May 24, 1984 as a result of back injury. He claims that his back injury keeps him from lifting, sitting, standing and walking.
 
 
 3
 At Tideswell's request, a hearing was held before an ALJ. In his decision, the ALJ found that Tideswell had not engaged in substantial gainful activity since May 24, 1984, and that the medical evidence established that Tideswell has "severe spondylolisthesis with spondylosis, scoliosis and degenerative changes of the lumbar spine" which precludes his return to his past relevant work as a carpenter/carpenter foreman. However, the ALJ also concluded that Tideswell's condition neither meets the listed impairments nor includes a non-exertional impairment which renders the listings inapplicable. Thus, the ALJ denied benefits, finding that there are a significant number of jobs in the national economy which Tideswell could perform. He reached this conclusion despite his recognition of the fact that Tideswell's residual functional capacity even for sedentary work is reduced by his inability to sit for long periods of time.
 
 
 4
 Tideswell submitted additional evidence to the Appeals Council in the form of a deposition of Dr. Haverbush and a letter brief of counsel. However, the Appeals Council denied Tideswell's request for review in a form letter.
 
 
 5
 Tideswell then filed the instant suit, which was referred to a magistrate. The magistrate ordered that motions for summary judgment together with supporting briefs be filed. In his report and recommendation, the magistrate stated that there was substantial evidence to support the conclusion that Tideswell is not disabled. The magistrate recommended granting summary judgment to the Secretary. The district judge adopted this recommendation and granted summary judgment to the Secretary.
 
 
 6
 Tideswell is a high school graduate. The Secretary's vocational expert characterized his past relevant work as skilled and heavy. Tideswell's employment ceased when he sustained a severe lower back injury while carrying a 100 pound load at work. He claims that his pain is constant and dull, and that at times it shoots down his legs and up his back. He claims that his left leg becomes numb on occasion, and that the lower half of the right leg and foot area are numb. He testified that he can stand for 15 minutes, after which the pain gets severe, and he can walk for 15 to 20 minutes, after which the pain also gets too severe. He cannot bend or lift, and cannot sit for longer than 15 to 20 minutes before having to move. The pain in his lower back is there all of the time, and is worse when he is active, or when he has been inactive for a time. He claims to have difficulty dressing himself, especially putting his socks on. He does not help with housework, make his bed, wash clothes, take out trash unless it is very light in weight, or vacuum. He works in the yard occasionally, mowing the lawn for ten minutes at most. He does not sleep well due to pain. He stated that the pain does get much worse at times, and he cannot move at all at those times. Usually, the severe pain lasts for about ten minutes, during which time he tries to get to a chiropractor or lies or sits down for about a half hour. He has stiffness every morning, and has difficulty ascending and descending stairs. He further testified that he would be working if he could.
 
 
 7
 On the other hand, Tideswell has taken only non-prescription Tylenol for his pain, allegedly because he does not want to become addicted to prescription drugs. He does not take the Tylenol every day. He also stated in his disability report that he drives about 300 miles per week. He testified that he no longer camps and fishes, but his disability report states the exact opposite. Also in his disability report, he stated that he babysits his granddaughter, performs small chores with domestic animals, does odd jobs and goes out to eat several times a month. All of this was inconsistent with Tideswell's own testimony.
 
 
 8
 The vocational expert testified that there are semi-skilled jobs available which Tideswell could perform if he had the residual functional capacity to perform sedentary work. In addition, there would be a large number of unskilled jobs available with a sit/stand option. However, the expert further stated that if Tideswell had all of the symptoms and limitations to which he had testified, he could not find any work.
 
 
 9
 The medical evidence is voluminous. Dr. William Schaefer, now deceased, evaluated Tideswell's condition on June 4, 1984. He found a reduced range of motion, diminished reflexes at the knees and ankles, bilaterally, diminution of pinprick sensation over the lateral thigh and lower leg on the left. He prescribed physical therapy, which Tideswell underwent but which was unsuccessful in relieving Tideswell's symptoms. In fact, his condition worsened.
 
 
 10
 Dr. William Redmon, a Board certified orthopedist, treated Tideswell in connection with Dr. Schaefer, from July to November 1984. He noted that there was substantial loss of motion of the lumbrosacral spine, and his x-rays showed "Grade Two spondylolisthesis of L-5, S-1 with virtually complete obliteration of the L-5/S-1 disc space." Spondylolisthesis is the "forward displacement of one vertebra over another." Dorland's Illustrated Medical Dictionary 1458 (25th ed. 1974). Spondylolisis is immobility and consolidation of a vertebral joint and is also a general term for degenerative changes due to osteoarthritis. Ibid.
 
 
 11
 Dr. John London, a family practitioner, examined Tideswell at the Secretary's request on November 5, 1985. He noted a positive straight leg raising test at 45 degrees, significant loss of motion of the lumbrosacral spine, and numbness in parts of both ankles. Dr. London also noted that Tideswell had difficulty getting on and off of the examining table without assistance. However, he further stated that Tideswell could walk on heels and toes without problem, and could squat and recover without difficulty.
 
 
 12
 Dr. Haverbush, also a Board certified orthopedist, began treating Tideswell on February 14, 1986, at which time he noted left leg atrophy, decreased pinprick sensation on the right, weakness of the extensor hallucis longus muscles more so on the right than the left, diminished left achilles reflex, severely limited range of lumbrosacral motion to 1/3 of normal, and a "positive" straight leg test on the right at 45 degrees with a crossover effect noted (which is caused by putting pressure on the nerve root which then sends pain down the opposite leg). Dr. Haverbush reviewed x-rays taken at the request of Dr. London, stating that they showed "a marked decrease in the L5/S1 disc space and also a Grade II spondylolisthesis at L-5/S-1." Haverbush admitted Tideswell to the hospital to perform a lumbar myelogram on March 26, 1986. The myelogram revealed no evidence of nerve root impairment, though it did show spondylolisthesis.
 
 
 13
 Dr. Haverbush testified that Tideswell's condition could be very painful because of the marked degree of narrowing at the lumbosacral juncture. He stated that "it certainly is very irritating to the small nerves that supply the tissue around the vertebra and the small joints behind the vertebra, and when the displacement is present it causes pressure on the tissues and irritation of those small nerve endings." Haverbush stated that Tideswell cannot intermittently sit, stand or walk during the course of an eight hour shift, that he is limited to lifting 10 lbs. occasionally, and cannot bend, twist, or climb stairs or ladders. His opinion was that Tideswell was disabled to the extent that he cannot work a regular eight hour shift on a daily basis because he must lie down two to three times a day to relieve the pain. He further explained that persons suffering from spondylolisthesis at L5-S1 "can have disc trouble and nerve root irritation at the disc one level higher than the spondylolisthesis, which in this particular case would be the L5 nerve root level." He also noted that diminution of the ankle reflex was often associated with motor loss in the sense of calf weakness, although he added that this was difficult to demonstrate during an examination. Haverbush concluded that the back condition met the criteria of Listed Impairment 1.05(C).
 
 
 14
 The district judge summarily adopted the magistrate's report and recommendation. That report and recommendation reviewed all of the above medical evidence and testimony, finding that substantial evidence supported the ALJ's conclusion that Tideswell was not disabled. He found that the ALJ had properly analyzed the case according to his own review of the evidence and his independent finding of residual functional capacity, not from complete reliance on the listings. The magistrate noted that the ALJ did not find Tideswell to be completely credible. The magistrate stated that, had he decided this case in the first instance, he might have ruled differently. However, he noted that, under the relevant case law, his review was to focus only on whether substantial evidence supported the ALJ's determinations, which he concluded it did.
 
 II
 
 15
 On appeal, Tideswell argues that the weight of the evidence establishes that he meets the listing in 1.05(C), that he is wholly disabled from performing gainful employment, and that the Secretary did not meet his burden of proof in establishing that a significant number of jobs exist which Tideswell could perform in his present condition.
 
 
 16
 * In reviewing a decision of the Secretary, the court must determine whether there is substantial evidence to support the Secretary's denial of disability benefits. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir.1981). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court "may not try the case de novo, nor resolve conflicts in evidence, nor decide the question of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984) (citation omitted). "Even if the court might arrive at a different conclusion, the decision must be affirmed if supported by substantial evidence." Siterlet v. Secretary of Health and Human Services, 823 F.2d 918, 920 (6th Cir.1987) (citation omitted).
 
 B
 
 17
 The listing for back injuries is found in 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.05. That listing states:
 
 Disorders of the spine:
 
 18
 A. Arthritis manifested by ankylosis or fixation of the cervical or dorsolumbar spine at 30 [degrees] or more of flexion measured from the neutral position, with x-ray evidence of: (1) Calcification of the anterior and lateral ligaments; or (2) Bilateral ankylosis of the sacroiliac joints with abnormal apaphyseal articulations; or
 
 
 19
 B. Osteoporosis, generalized (established by x-ray) manifested by pain and limitation of back motion and paravertebral muscle spasm with x-ray evidence of either: (1) Compression fracture of a vertebral body with loss of at least 50 percent of the estimated height of the vertebral body prior to the compression fracture, with no intervening direct traumatic episode; or (2) Multiple fractures of vertebrae with no intervening direct traumatic episode; or
 
 
 20
 C. Other vertebrogenic disorders (e.g., hernieated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2: (1) Pain, muscle spasm, and significant limitation of motion in the spine; and (2) Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 21
 If a claimant suffers from multiple impairments, the impairments will be looked at in combination to determine if, together, they meet a listing. 20 C.F.R. Sec. 404.1526. In addition, the Secretary must designate and consult with a doctor regarding the combination of impairments. Ibid. Although testimony establishing that "pain occasions a claimant's inability to perform his or her usual work is sufficient to make a prima facie case," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980) (citations omitted), the Secretary meets his burden of proving that substantial evidence supports the denial of benefits "through reliance on the testimony of a vocational expert...." Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir.1987).
 
 
 22
 Under the regulations, the Secretary must analyze each claim of disability according to a series of steps, beginning with consideration of whether a claimant is engaged in substantial gainful activity. 20 C.F.R. Sec. 404.1520(b). If not, the next step is to determine whether the claimant has a severe impairment, which is "an impairment or combination of impairments that significantly limits the ability to do basic work." Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1110 (6th Cir.1986) (citing 20 C.F.R. Sec. 404.1520(c)). If so, the next step is to determine whether the claimant is disabled acoording to one of two methods. Ibid. First, if one's ailment meets one of the Listings of Impairments, one will be found disabled. Ibid. (citing 20 C.F.R. Sec. 404.1520(d)). If a listing is not met, the next inquiry is whether the claimant can perform his past relevant work, and, if not, whether the claimant retains the residual functional capacity to perform any work at all. Ibid. (citing 20 C.F.R. Secs. 404.1520(e), 404.1545).
 
 
 23
 A claimant must show that the claimant meets all of the individual requirements of a listing to show that the claimant meets the listing as a whole. King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). Thus, in Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1083 (6th Cir.1987), a claimant's failure to show persistent muscle spasms or that he was undergoing prescribed therapy supported the Secretary's denial of benefits under Listing 1.05(C). In Nunn v. Bowen, 828 F.2d 1141, 1144 (6th Cir.1987), benefits under the same Listing were denied because the claimant could not show sensory and motor loss.
 
 
 24
 Tideswell claims that he meets Listing 1.05(C). Tideswell has been diagnosed as suffering from vertebrogenic disorders including spondylolisthesis, spondylolisis, and general degenerative changes of the spine. The first medical report in the record is dated June 1984, and Dr. Haverbush continued to see symptoms in March 1986. Thus, the condition has lasted well over twelve months. There is no doubt that there is some pain, and Dr. Schaefer, Dr. Redmon, Dr. London and Dr. Haverbush found decreased range of motion of the spine. Dr. Schaefer found reduced sensation; Dr. London found numbness in the ankles; and Dr. Haverbush found left leg atrophy, decreased sensation, muscle weakness, diminished reflex, and a crossover effect, which means that pain is sent down the opposite leg from the one being raised--the radicular effect referred to in the regulation. Even if we are to overlook inconsistencies in these reports, there is no evidence anywhere in the record that Tideswell suffers from spasm, which is a necessary element of the listing. 20 C.F.R. Part 404, Subpart P, Appendix 1, Sec. 1.05(C). In that the regulation is to be applied strictly, as the above cases indicate it is, there is substantial evidence to support the conclusion that Tideswell does not meet the listing. Thus, we affirm the Secretary's decision.
 
 C
 
 25
 If the claimant does not meet the listing, but has presented a prima facie case of disability with respect to his normal work, "the burden shifts to the government to go forward with proof that the claimant has residual capacity for substantial gainful activity. O'Banner v. Secretary of Health, Education and Welfare, 587 F.2d 321, 322 (6th Cir.1978) (citations omitted). In other words the Secretary must make a "finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs...." Id. at 323 (citation omitted). "The preferred method [for supporting such a finding] is testimony by a vocational expert which may be considered in conjunction with specific medical testimony." Ibid. "An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record." Hardaway v. Secretary of Health and Human Services, 823 F.2d 922, 927 (6th Cir.1987). Here, the vocational expert testified that there are numerous jobs available with a sit/stand option for which Tideswell is qualified.
 
 
 26
 Further, in evaluating the severity of impairments, "[t]he opinion of a treating physician is entitled to weight substantially greater than that of a doctor who has seen the claimant only once." Hardaway, 823 F.2d at 927; Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1054 (6th Cir.1983). An ALJ must specifically find that the doctor's opinion is not supported by the medical evidence before discounting it. "While the ALJ [is] not bound by the opinions of plaintiff's treating physician, he [is] required to set forth some basis for rejecting these opinions." Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987). If a treating physician's opinion is uncontradicted, it is entitled to complete deference. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir.1985). However, the ALJ is not bound by conclusory statements regarding the claimant's eligibility for benefits. King v. Heckler, 742 F.2d 968, 973 (6th Cir.1984). Thus, the ALJ is not bound by Dr. Haverbush's conclusory statement that Tideswell is disabled. Further, the ALJ pointed out that Haverbush's opinion appears to be inconsistent with the preponderance of the medical evidence in that Haverbush would place more severe restrictions on Tideswell than would any of the other physicians. We agree.
 
 
 27
 The determination of a claimant's residual functional capacity to perform sedentary work is not appropriate when a claimant has been shown to be incapable of sitting or standing for long periods of time. Howse v. Heckler, 782 F.2d 626, 628 (6th Cir.1986); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 498 (6th Cir.1985). In Howse, this court stated that "sedentary work as defined by the Secretary's regulations contemplates substantial sitting as well as some standing and walking, and ... alternating between sitting and standing, ..., may not be within the definition of sedentary work." 782 F.2d at 628 (citing Wages, 755 F.2d at 498). In Wages, this court found that there was not substantial evidence that a claimant who had to alternate between sitting and standing for comfort could perform sedentary work that did not allow for a sit/stand option. 755 F.2d at 499. Here, though, because the vocational expert did testify with respect to the availability of jobs with a sit/stand option, his testimony was proper, and can serve as a basis for a finding of substantial evidence in support of the Secretary's denial of benefits.
 
 D
 
 28
 The ALJ questioned Tideswell's credibility with respect to his claims of pain. Tideswell disputes this finding. The controlling case in this jurisdiction on the issue of determining a claimant's credibility is Duncan v. Secretary of Health and Human Services, 810 F.2d 847 (6th Cir.1986). There, this court announced a two-part test for assessing subjective claims of pain. First, we must determine if there is objective medical evidence of an underlying medical condition. Id. at 853. Here, there is no doubt that Tideswell suffers from an impairment. Then, we must determine "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Ibid. This court has held, also, that "credibility determinations with respect to subjective complaints of pain rest with the ALJ." Siterlet v. Health and Human Services, 823 F.2d 918, 921 (6th Cir.1987) (citing Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983)). Although an ALJ may not use what is called a "sit and squirm" test, "[s]ince the ALJ had the opportunity to observe the demeanor of the [claimant], his conclusions with respect to credibility 'should not be discarded lightly.' " Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir.1984) (citing Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir.1978)). Claims of pain "may be discredited by evidence that he or she has received minimal treatment and/or has taken medications, other than aspirin, for pain only on an occasional basis." Williams v. Bowen, 790 F.2d 713, 715 (8th Cir.1986); Kimbrough v. Secretary of Health and Human Services, 801 F.2d 794, 797 (6th Cir.1986).
 
 
 29
 In the instant case, Tideswell admits that he has never taken any medication stronger than Tylenol for his condition, and that he does not take even that every day. Further, although there is an objectively verifiable medical condition, its severity is not easily determined. Dr. Haverbush opined that Tideswell's condition could be painful; however, the other physicians who treated or examined Tideswell do not mention the severity of the pain which might be associated with his impairment. The ALJ noted that the claimant "said that he could lift 10 pounds, at least once, that he can drive for relatively long distances, that he can care for most of his own personal needs, that his appetite is normal, that he can mow his lawn, at least for brief periods of time, and that he takes no strong medication for pain." In addition, Tideswell's testimony was not entirely consistent with his disability report, in which he stated that he could drive, camp, fish, babysit his granddaughter, do odd jobs, and go out to eat several times a month. The conflict between the disability report and the testimony, in which Tideswell claimed that his activities were much more limited, provides further grounds for questioning his credibility. Thus, substantial evidence supports the ALJ's credibility determination.
 
 III
 
 30
 In conclusion, we hold that the ALJ's decision is supported by substantial evidence. There is no evidence of spasm, which disqualifies Tideswell from meeting the listing. The ALJ's determination that Tideswell's impairments in combination left him with the residual functional capacity to perform sedentary work with a sit/stand option is consistent with the medical evidence. Thus, the Secretary's determination is supported by substantial evidence, and must be affirmed.