911 F.2d 731
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cathy BROWN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-4000.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1990.
 
 Before KRUPANSKY and BOGGS, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Claimant Cathy Brown, an obese woman, presented evidence to the Secretary of arthritic changes in her right hip and knees, pain in her hip and back, and limitation of motion in her neck. However, the Secretary found that she was not disabled on the basis of obesity as defined at 20 C.F.R., Part 404, Subpart P, Appendix I, Sec. 10.10A (the Listing), because she did not have arthritic changes and pain and limitation of motion in the same joint. He further found that she retained the residual functional capacity to perform her previous work, and was thus not disabled.
 
 
 2
 On appeal, Brown argues that she meets the requirements under the Listing, since she has arthritic changes, pain, and limitation of motion in weight-bearing joints (although not all symptoms in the same joint); that she has a condition medically equivalent to the Listing; that the Secretary erred by not ordering further consultative examinations to establish her disability under the Listing; and, that substantial evidence does not support the Secretary's finding that she retains the residual functional capacity to perform her previous work. Finding that the decision of the Secretary is supported by substantial evidence, and finding no abuse of discretion in his decision not to order further consultative examinations, we affirm his decision in its entirety.
 
 
 3
 * Brown was born March 27, 1952. She is between 5' 6 1/2" and 5' 8" tall, weighs approximately 316 pounds, and has a tenth grade education. Beginning in 1977, Brown worked as a food service worker. In this job, Brown filled racks with glasses and placed them on a conveyor belt. She also washed dishes and stacked trays. These jobs were performed while standing, and required Brown to lift glass racks weighing between five and ten pounds above shoulder level.
 
 
 4
 In 1977 or 1978, she hit her head on a cement ceiling beam while working. She was apparently off work for a "couple of days," but continued working (sporadically, says Brown) as a food service worker until March 1980, when she stopped working altogether. Brown contends that she stopped working because she was not given approval to work from her treating physician, Dr. James C. Cameron, D.O.
 
 
 5
 On January 12, 1987, Brown filed an application for supplemental security income. She alleged that she became disabled in 1978 due to the head, neck, and back injury she sustained when she hit a ceiling beam. Her application was denied both initially and upon reconsideration. Brown then requested a hearing before an ALJ.
 
 
 6
 On April 9, 1987, at the request of the Ohio Bureau of Disability Determination, Dr. Daniel L. Kessler, M.D., examined Brown. Brown told Dr. Kessler that she had headaches and neck pain two to three times a week, but indicated that the headaches were not necessarily related to the neck pain. Brown also complained that she had dull back pain on a daily basis that radiated to her buttocks and thighs. Dr. Kessler reported no abnormal clinical findings, and specifically found that she had a full range of motion in her lumbar and cervical spine and no joint abnormality.
 
 
 7
 On May 15, 1987, Dr. Drew J. Arnold, M.D., a physician with the Bureau, reviewed Dr. Kessler's report and concluded that Brown could perform medium work. This conclusion was confirmed by Dr. Edmond W. Gardner, M.D., another physician with the Bureau, who reviewed Dr. Kessler's findings on July 14.
 
 
 8
 On July 30, 1987, Brown visited Dr. Cameron, her treating physician, whom she had seen before. Dr. Cameron reported only one abnormal finding: a limited range of neck motion. He did not indicate that she had any other joint motion problems or abnormalities. Nonetheless, he concluded that Brown was unable to do any lifting, bending, or prolonged sitting, and opined that she was "100% permanently and totally disabled."
 
 
 9
 Dr. Cameron completed an assessment form in which he indicated that Brown could sit for a total of 30 minutes in an 8 hour day, and stand and walk for a total of 30 minutes in an 8 hour day. He added that Brown could not use her feet to operate foot controls, and could not push, pull, reach above shoulder level, or perform simple grasping or fine manipulation.
 
 
 10
 A hearing was held before an ALJ on March 3, 1988. Brown complained that she had neck pain on a daily basis that radiated to her shoulders. She also testified that she could turn her head only "a little." Brown testified that she had persistent low back pain, which was relieved by lying on the floor with pillows under her legs for 35-40 minutes. She also complained that, for the past 4 to 5 years, she had suffered from hip pain when she walked. She admitted that she had not told Dr. Cameron about this pain. Brown indicated that she could lift only 4 or 5 pounds, but admitted that she had no problem lifting a gallon of milk (which weighs 8 pounds). Brown testified that she does laundry, reads once in a while, sews and mends things by hand, shops, cooks, and helps with the dishes.
 
 
 11
 On April 26, 1988, the ALJ determined that Brown retained the residual functional capacity to perform a full range of medium work, and that her past relevant work as a food service worker was consistent with that capacity. He thus found that Brown was not disabled.
 
 
 12
 On June 28, 1988, Brown visited Dr. Charles B. May, D.O. Dr. May stated that both left and right knee and right hip x-rays were normal. Dr. May, however, did not include the actual x-ray reports. Brown then sought review of the ALJ's decision before the Appeals Council, and presented Dr. May's report to the Council. On September 26, 1988, the Appeals Council remanded the case to the ALJ to consider Dr. May's report and issue a new decision. On November 28, 1988, the ALJ again found that Brown was not disabled.
 
 
 13
 The ALJ found that Brown did not suffer from an impairment that met or equalled Listing 10.10A. This Listing concerns disability on the basis of morbid obesity.
 
 Listing 10.10 reads, in relevant part:
 
 14
 10.10 Obesity. Weight equal to or greater than the values specified in ... Table II for females (100 percent above desired levels) and one of the following:
 
 
 15
 A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine....
 
 
 16
 The ALJ found that Brown's weight exceeded the minimum requirement for her height, but found that she did not evidence the requisite arthritic symptoms listed in subsection A of the Listing; none of the other subsections were applicable.
 
 
 17
 The ALJ noted that, although she presented some evidence of arthritic degeneration in her knees and right hip, and alleged pain in her right hip and lower back, she presented evidence of limitation of motion only in her neck. Accordingly, he found that she was not disabled under Listing 10.10A. The ALJ then found that Brown could perform her past relevant work as a food service worker, and thus was not disabled. The ALJ found, in the alternative, that Brown was not disabled because she could perform a significant number of jobs in the national economy, even with her stated limitations.
 
 
 18
 Brown again sought review before the Appeals Council. On March 15, 1989, the Appeals Council denied Brown's request for review. Brown then sought review in federal district court. On October 3, 1989, the district court found that substantial evidence supported the Secretary's determination that Brown was not disabled. Brown appealed.
 
 II
 
 19
 On appeal, Brown contends that the Secretary erred when he found that she did not meet or equal Listing 10.10A. We disagree. At best, Brown presented some evidence that she has limitation of motion and pain in her neck (according to Dr. Cameron's report, but refuted by the report of Dr. Kessler), pain in her hip (according to her testimony and Dr. May's report), pain in her back, and arthritic changes in her knees and right hip (according to Dr. May's report). This evidence, even if accepted as fully credible, does not meet or equal Listing 10.10A.
 
 Listing 10.10A provides, in relevant part:
 
 20
 10.10 Obesity. Weight equal to or greater than the values specified in ... Table II for females (100 percent above desired levels) and one of the following:
 
 
 21
 A. History of pain and limitation of motion in any weight bearing joint or spine (on physical examination) associated with X-ray evidence of arthritis in a weight bearing joint or spine....
 
 
 22
 20 C.F.R., Part 404, Subpart P, Appendix I, Sec. 10.10A (emphasis added). This court has held that the pain and limitation of motion must exist in the same joint as the arthritic changes. Jacobs v. Secretary of Health and Human Services, No. 87-5348 (6th Cir. Dec. 22, 1987) (unpublished decision).
 
 
 23
 In Jacobs, as in this case, the claimant fulfilled the weight requirement for Listing 10.10A. However, the Jacobs court found Listing 10.10A inapplicable, stating that "appellant had a normal range of motion in the joints affected by the arthritis. There is therefore insufficient evidence to establish a 'limitation of motion' under subsection A of section 10.10 above." Since Brown similarly cannot demonstrate a limitation of motion in her knees or right hip, she does not fulfill the requirements of Listing 10.10A.
 
 
 24
 Brown also argues that, if she does not meet this Listing, she has a condition medically equivalent to this Listing, namely arthritic changes and pain. However, as the government points out, and we agree, these symptoms are already addressed in Listing 10.10A. Brown has not demonstrated that she has an equivalent medical condition, but essentially argues, unpersuasively, that the Secretary should waive the requirement that arthritic changes, pain, and limitation of motion exist in the same joint and simply deem her condition to be medically equivalent to that in Listing 10.10A.
 
 
 25
 However, it would circumvent Listing 10.10A to find that these symptoms, in different joints, are medically equivalent to these symptoms in the same joint. The requirement of coexistence under Listing 10.10A must be paid some heed. Accordingly, we find that substantial evidence supports the Secretary's determination that Brown's condition is not medically equivalent to the condition set forth in Listing 10.10A.
 
 III
 
 26
 Brown contends that the Secretary erred by not ordering further consultative medical examinations concerning her arthritis, and thus did not make the required "full inquiry" into her condition as required under 20 C.F.R. Sec. 416.1444. We disagree. As we stated in Landsaw v. Secretary of Health and Human Services:
 
 
 27
 The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant.
 
 
 28
 803 F.2d 211, 214 (6th Cir.1986). Brown discharged this burden by submitting the reports of Drs. Cameron and May. Reading these reports together, the Secretary had a record "complete and detailed enough" to determine that Brown did not meet or equal Listing 10.10A, and thus the Secretary did not abuse his discretion by not ordering further consultative examinations.
 
 
 29
 As discussed above, Brown must prove that she has arthritic changes as well as pain and limitation of motion in the same weight-bearing joint to meet Listing 10.10A. Although she presented some evidence of arthritic changes (in the right hip and both knees) and of pain (in the back and hip) and limitation of motion (in the neck), she presented no evidence of all three symptoms existing in the same joint.
 
 
 30
 Brown argues that, since she demonstrated pain and limitation of motion in some joints, it was incumbent upon the Secretary to order a full radiological examination. Dr. May performed such an examination of her lower body, and found possible arthritis only in her knees and right hip. However, the physical examination performed by Dr. Cameron found limitation of motion only in her neck, and not in her knees or hip. Brown has not presented evidence of pain in her neck, and, accordingly, evidence of arthritis in this joint would not help her meet the Listing.
 
 
 31
 Since the record in this case was sufficiently complete to allow a disability determination to be made, the Secretary did not err by not ordering a consultative examination. In Landsaw, we pointed out:
 
 
 32
 "[F]ull inquiry" does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make a disability decision.
 
 
 33
 Landsaw, 803 F.2d at 214 (quoting Turner v. Califano, 563 F.2d 669, 671 (5th Cir.1977)) (emphasis in original). The Secretary is not required to explore every potential ailment of a claimant through consultative examinations, see ibid., but rather is granted the discretion to order such examinations when the record before him does not permit him to make a disability determination.
 
 
 34
 A report is not necessarily incomplete simply because it does not provide the evidence sought by a claimant. Mere silence as to a medical condition has been insufficient for courts to find that the Secretary has abused his discretion in not ordering a consultative examination. In cases cited by Brown in support of the need for further consultative examinations, the medical reports have raised suspicions about the existence of certain medical conditions, but have neither confirmed nor denied their existence.
 
 
 35
 In Johnson v. Secretary of Health and Human Services, this court pointed to ambiguous and suggestive language in a medical report, possibly indicating the existence of a listed impairment:
 
 
 36
 We cannot ascertain what [the doctor] meant by "degenerative changes," nor can we understand how the ALJ could find that none of the subsections were satisfied when he found that Johnson suffered from marked limitation of movement and documented arthritis.
 
 
 37
 794 F.2d 1106, 1111 (6th Cir.1986) (emphasis added). In Poulin v. Bowen, the District of Columbia Circuit noted that a doctor's reports and testimony of claimant's witnesses raised suspicions about a claimant's mental health during a relevant time period:
 
 
 38
 These reports and this testimony shed some faint light on appellant's general mental health during the period between hospitalizations, as well as on the effect of his job on his health and his reasons for leaving the position. However, no evidence or record bears specifically on the 19 months in question. The administrative law judge asked no questions at the hearing about either the relevant time period or the effect on [the claimant] of [his job], although "[m]ore probing questioning ... would undoubtedly have provided more probative information."
 
 
 39
 817 F.2d 865, 871 (D.C.Cir.1987) (emphasis added) (quoting Lashley v. Secretary of HHS, 708 F.2d 1048, 1052 (6th Cir.1983)). In Baker v. Bowen, the claimant's complaints raised suspicions about impairments, but the Secretary neither possessed sufficient evidence to address those complaints, nor did he order further tests to do so:
 
 
 40
 We are at a loss to understand why the Secretary ordered a consultative physical examination without requesting that recent x-rays of [the claimant's] spine be taken.... Moreover, his reliance on the dearth of objective medical evidence to support the denial of benefits was, under these circumstances, erroneous.
 
 
 41
 886 F.2d 289, 292 (10th Cir.1989).
 
 
 42
 In contrast, Dr. May's report does not raise a suspicion about arthritic changes and pain in Brown's neck, and Dr. Cameron's report does not raise a suspicion about limitation of motion in Brown's right hip or knees. The reports, read together, neither establish nor suggest that arthritic changes and pain and range of motion limitations exist in the same weight-bearing joint, nor do they raise unanswered questions about such symptoms existing in the same weight-bearing joint. Brown's complaints also do not indicate the possibility that arthritic changes, pain, and limitation of motion exist in the same joint. Accordingly, we find that the Secretary did not abuse his discretion in refusing to order further consultative examinations.
 
 IV
 
 43
 The ALJ found that Brown retained the residual functional capacity to perform her past relevant work as a food service worker and a significant number of jobs in the national economy. On appeal, Brown contends that these determinations are not supported by substantial evidence. We disagree.
 
 
 44
 The Secretary found that Brown could perform "medium work," which is described as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. Sec. 416.967(c). Accordingly, the Secretary determined that Brown could perform her past relevant work as a food service worker, or, in the alternative, a significant number of jobs in the national economy. He thus found that Brown was not disabled.
 
 
 45
 Brown contends that the Secretary's finding that she could perform medium work is contradicted by the report of Dr. Cameron, her treating physician, who found that she was "100% permanently and totally disabled." Dr. Cameron found that Brown could not do simple grasping, pushing, pulling, fine manipulation, bending, squatting, crawling or climbing, and that she could sit for only 1/2 hour of an 8 hour day, and stand for 1/2 hour of an 8 hour day.
 
 
 46
 Instead of crediting Dr. Cameron's opinion, the Secretary relied largely on Dr. Kessler's findings, findings that were made after a physical examination. Dr. Kessler found Brown essentially to be normal, and found specifically, after performing range of motion and other tests, that she had "no evidence of joint abnormality" and demonstrated a "full range of motion of all joints."
 
 
 47
 In rejecting Dr. Cameron's opinion in favor of that of Dr. Kessler, the Secretary found that Dr. Cameron's findings were based primarily on Brown's subjective complaints. In particular, Dr. Cameron opined that Brown was totally disabled, yet noted the limitation of motion in her neck as her only objectively abnormal clinical condition. Furthermore, some of Dr. Cameron's findings as to Brown's limitations were refuted by her testimony that she did hand sewing, laundry, and grocery shopping, in which she lifted items weighing at least eight pounds.
 
 
 48
 Brown contends that the opinion of Dr. Cameron, her treating physician, is entitled to more weight than that of Dr. Kessler, who examined her only once. Hephner v. Mathews, 574 F.2d 359, 360 (6th Cir.1978). However, an examining physician's opinion is not entitled to great weight if it is not supported by sufficient medical data. Landsaw v. Secretary of Health and Human Services, 803 F.2d 211, 213 (6th Cir.1986). In this case, Dr. Cameron's opinion lacks sufficient medical data. Dr. Kessler, however, does supply data in support of his opinion. The Secretary did not err in discounting the unsupported opinion of Dr. Cameron in favor of the supported opinion of Dr. Kessler. The Secretary's determination that Brown retains the residual functional capacity to perform her past relevant work as a food service worker is therefore supported by substantial evidence.
 
 
 49
 For the foregoing reasons, the decision of the Secretary is AFFIRMED in all respects.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation