Debra L. ALLISON, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. CIV.03–CV–74354–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 2, 2004.

**440**

Lewis M. Seward, Seward, Tally, Bay City, MI, for Plaintiff.

Geneva S. Halliday, Detroit, MI, for Defendant.

### JUDGMENT

FEIKENS, District Judge.

This action came before the Court, Honorable John Feikens, District Judge, presiding, and the issues having been duly reviewed and a decision having been duly rendered,

It is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Summary Judgment is **GRANTED IN PART**, Defendant's Motion for Summary Judgment is **DENIED**, and **REMAND** this case to the Defendant Commissioner for further proceedings consistent with the Magistrate Judge's Report and Recommendation of September 30, 2004.

It is further **ORDERED** that the Clerk serve a copy of this Judgment by United States mail on the counsel for Plaintiff, counsel for the Defendant, and the Social Security Commission.

### REPORT AND RECOMMENDATION *

CAPEL, United States Magistrate Judge.

### I. RECOMMENDATION

It is recommended that the Court grant Plaintiff's Motion for Summary Judgment in part, deny Defendant's Motion for Summary Judgment, and remand this case for proceedings consistent with this Report.

### II. REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income [SSI] and disability insurance benefits [DIB]. Plaintiff filed for benefits on September 8, 2000, alleging that she has been disabled and unable to work since September 15, 1996,[1] due to osteoarthritis causing back pain, neck pain, swelling in her hands, wrists, hips, knees, elbows and ankles. (TR 50–53, 62, 364–65). The Social Security Administration [SSA] denied benefits initially on January 24, 2001. (TR 36–40, 367–70). A de novo hearing was held on November 6, 2002, before Administrative Law Judge [ALJ] William J. Musseman. (TR 382–409). In a decision dated December 10, 2002, the ALJ found that Plaintiff could perform some sedentary work. (TR 17–28). Accordingly, Plaintiff was found not disabled. Plaintiff then made this appeal to district court.

---

* This Report and Recommendation was completed with significant input from Lori A. Lookliss, Law Clerk to Magistrate Wallace Capel, Jr.

1. Plaintiff's Protective Filing Sheet stated that her onset date was September 15, 1999, but her application (TR 51), disability report (TR 62), and the ALJ's evaluation (TR 18), state that the date was September 15, 1996.

## A. NOVEMBER 6, 2002, TESTIMONY

### 1. Plaintiff's Testimony

Plaintiff was born on October 24, 1954, and was 48 at the time of the hearing. (TR 385). Plaintiff completed tenth grade in high school. *Id.* She is right-handed. (TR 388). She never attempted her GED. (TR 385–86). She testified that she is five foot, five inches tall and weighs one hundred and eighty-seven pounds, but that her normal weight is one hundred and forty-five pounds. (TR 386). Plaintiff reported that she maintained her normal weight back in 1993 or 1994, but gained weight due to her depression. *Id.* She explained that she eats when she is sad and when she is inactive. *Id.* Plaintiff stated that she just "cover[s][her] head and lean[s] back" when she is depressed. *Id.*

Plaintiff testified that she has been diagnosed with bipolar disorder and has had manic episodes. (TR 386–87). Plaintiff explained that she was manic more often before she moved in with her mother, but that she has had about six episodes since September of 2000. (TR 387). Plaintiff stated that the episodes last a couple of hours and her mom will help her calm down. *Id.* She testified that she moved into her mother's mobile home two years ago. *Id.* She stated that her mother, her mother's husband, and Plaintiff's grandson live there. *Id.*

Plaintiff testified that she has a license to drive a motor vehicle, but that she has difficulty driving. (TR 387–88). Plaintiff stated that she gets nervous when she drives and does not feel that she is a good driver. (TR 388). Plaintiff stated that the distances she does drive take her less than five minutes to complete. *Id.* Plaintiff stated that her mother drives the rest of the time. *Id.*

Plaintiff testified that she last worked in 1996 and the longest job she has ever held was for one year. *Id.* Plaintiff stated that her longest job was at a canning factory in 1992 or 1993. *Id.* She explained that her job was to "pull cans," which required her to put rope around the cans to get the cans onto the assembly line. (TR 389). Plaintiff stated that all the work she has done was factory jobs [2] except for a couple jobs as a nurse's aide. *Id.* She stated that she was required to lift people as a nurse's aide from their bed to a wheelchair or gurney. *Id.* Plaintiff stated that she tried to go back to being a nurse's aide, but it only lasted about a month. (TR 390).

Plaintiff stated that the last job she had was in a grocery store, where she worked at the deli. (TR 391). She stated that her responsibilities were to dish out salad and cut meat. *Id.* She testified that the deli work was very hard for her because she had to wash dishes and mop the floor which exacerbated her back pain. *Id.* She stated that she would go home and cry. *Id.*

Plaintiff stated that she does certain chores around the house. *Id.* She explained that she can make her bed, help her mother fold clothes, and believes she could help her mother dust, but she has not done so. *Id.* She stated that she does not do any cooking, but that she helps rinse the dishes and put them into the dishwasher. (TR 391–92). Plaintiff testified that her mother does the rest of the household chores. (TR 391). Plaintiff stated that she is able to care for her personal needs with the exception of doing

2. Plaintiff stated that another one of her factory jobs required her to put rivets in other pieces that were part of a motor. (TR 390). She explained that this was light work and she could not lift anything heavy, but that the "guys" lifted the "heavy stuff." *Id.*

her own hair. (TR 392). She explained that she has a torn rotator cuff. *Id.*

Plaintiff testified that she usually tries to get up in the morning at about seven. *Id.* Plaintiff stated that she takes Seroquel and Elavil to help her sleep at night. *Id.* She stated that she tries to go to bed at nine, but usually she doesn't get to bed until ten. *Id.* However, she stated that she does not feel rested when she wakes up. (TR 392–93). Plaintiff testified that she sleeps during the day, too. (TR 393). She stated that she takes a nap at least once a day for two to three hours because of her depression. *Id.* She stated that she "feel[s] sick and tired a lot." *Id.* Plaintiff stated that the first thing she does when she gets up in the morning is to pick out her grandson's clothes and get him ready.[3] *Id.* She stated that she then eats breakfast with him.[4] *Id.* Plaintiff explained that she then goes with her mother to take her grandson to school. (TR 393–94). She stated that when she gets back home, she sits and watches television. (TR 394).

Plaintiff testified that her schedule is similar on the weekends. (TR 395). She stated that gets up at eight in the morning because she is used to getting up at that time during the week. *Id.* She stated that she stays up until about eleven or later at night watching television. *Id.* She testified that she also naps on the weekends for about an hour and a half to two hours, once in the morning and once in the afternoon. (TR 395–96).

Plaintiff testified that she does not have any current hobbies, but that she used to bike, walk, and read. (TR 394). She stated that she still reads, but she reads magazines now because the articles are short and she can finish them. *Id.* She explained that it would take her a couple years to finish a book because she has difficulty concentrating and she forgets what she reads. *Id.* Plaintiff stated that she has to read things repeatedly. *Id.* She explained that she also forgets things she watches on television. (TR 395). She stated that could not remember what she watched the night before the hearing, but that it was a movie. *Id.* Plaintiff testified that her memory is "not good." *Id.*

Plaintiff testified that she cannot lift over five pounds because of her bad shoulder. (TR 396). She stated that she also has a bad neck and lower back. *Id.* Plaintiff stated that she cannot stand over five to ten minutes in one spot because of her lower back. *Id.* Plaintiff stated that she can only sit comfortably for about ten minutes in one spot because of stiffness and pain. *Id.* She testified that she could walk to her mother's car pretty comfortably, which her attorney estimated to be twenty-five to fifty yards. *Id.* Plaintiff explained that after that distance she would have problems with her lower back, neck, and her right lower leg. (TR 397). She added that she had surgery twice for varicose veins and she has problems with her right knee as well as left foot pain.[5] *Id.* Plaintiff stated that after walking to her mother's car she would be in pain, but she would not be tired. *Id.* Plaintiff testified that she does not climb stairs. *Id.* She explained that she used to have to climb stairs at her sister's and she would have to stop every fourth stair, and she would also have to put both feet on each step for balance. *Id.*

---

3. Plaintiff stated that her grandson is able to dress himself, but she helps him. *Id.*

4. Plaintiff stated that her mom makes them breakfast. *Id.*

5. Plaintiff stated that she has not had her left foot x-rayed yet, so she is not sure what the problem with it is. *Id.*

Plaintiff testified that she is not able to squat because of her back and her right leg. (TR 399). She testified that she would not be capable of performing a job that required repetitive motion of her hands or feet because of her right shoulder, neck, lower back, and right leg. (TR 399–400). Plaintiff stated that she drops things a lot and with her arthritis it is hard for her to pick up change and button her clothes. (TR 400). Plaintiff explained that it is getting hard to use her left hand and that she is having tests done now to determine the problem. *Id.*

Plaintiff testified that she would not be able to work overhead because of her bad right shoulder and pain in the left thumb area. (TR 398). Further, she added that her neck would also bother her if she had to work overhead. *Id.* Plaintiff also testified that she has four or five headaches a week. *Id.* She explained that the headaches come suddenly. She stated, "I was in the grocery store a couple months ago and it was like just pain right here, and I had to stop. I couldn't move. I just hurt really bad. It scared me." *Id.* Plaintiff testified that her headaches are not migraines, but she takes a prescription drug for them.[6] *Id.* She stated that on some days the headaches last an hour or longer and she has some headaches that make it painful for her to move her head. (TR 399). Plaintiff stated that she puts a cold washcloth over her eyes and head and lays down to help her headaches. *Id.* She explained that light hurts her eyes and noise also bothers her. *Id.*

Plaintiff stated that she is in pain most of the time. (TR 400). She stated that on a scale of one to ten, with ten being the most pain, she is usually at a five or a six. *Id.* Plaintiff stated that there are things

that aggravate her back placing her pain at a ten. *Id.* She added that her shoulder also gets up to a ten when it is aggravated. *Id.* Plaintiff stated that her shoulder pain affects her arm and hand. (TR 400–01). She explained that they get numb and she has some nerve damage. (TR 401).

Plaintiff testified that she also has an anxiety disorder and does not like being around people. *Id.* She stated that as a result, she has problems going to the grocery store, K–Mart, and other places. *Id.* Plaintiff stated that she is still able to do some of the shopping, but she usually does not go by herself. *Id.* Plaintiff stated that "just hanging onto the shopping cart" helps her get around the store. *Id.* She testified that she usually goes shopping about twice a week with her mother for groceries. *Id.*

Plaintiff testified that she has bowel problems about every three days and it lasts for two to three days at a time alternating between diarrhea and constipation. (TR 402–03). She stated that she had irritable bowel syndrome at one time and continues to have problems where she may go to the bathroom fifteen times a day. (TR 402). She explained that on other days she is bloated and it is very painful, but that she takes medication to help with it. *Id.* She also stated that she has incontinence because of her loose bowels and is on medication. *Id.* She explained that she does not like to take the medication, though, because she has dreams and talks in her sleep when she takes it. *Id.* She stated that it upsets her. (TR 403).

Plaintiff testified that she has been seeing a doctor for sixteen years for her mental problems. *Id.* She stated that she has tried every kind of anti-depressant and

---

6. Plaintiff stated that she takes "Gereset" (phonetic). (TR 398). However, she does not list this drug or any other prescription for headaches in her application for benefits. (TR 67, 118).

is finally taking Zoloft in the morning and Seroquel at night, which she thinks seem to be working. *Id.* She added that she also takes Elavil. *Id.* She stated that the Seroquel is both to help her sleep and for her bipolar disorder. (TR 403–04).

### 2. Plaintiff's Mother's Testimony

Plaintiff's mother testified that Plaintiff lives with her. (TR 404). She added that Plaintiff was molested by her father, as were her other two daughters. (TR 405). She stated that "pretty much everything [Plaintiff] said is the truth." *Id.*

### B. *MEDICAL EVIDENCE*

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[7]

### C. *VOCATIONAL EXPERT'S TESTIMONY*

Melody Henry, a vocational expert [VE], testified at the hearing. (TR 406–08). The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience was "[l]imited to an exertional level and the full range of sedentary, with non-exertional limitations of a sit/stand option. No repetitive bending, squatting, kneeling, crawling, climbing. No over chest level work. No push/pull maneuvers. No complex tasks. Define that as one to two step only. No dealing with the general public. Rare dealing with coworkers." (TR 407). The VE testified that if Plaintiff could be in the vicinity of other coworkers but not interacting with them that there were existing occupations for such a claimant. *Id.*

The ALJ added that there could be co-workers in the vicinity, but that she would not have to interact with them into the hypothetical. *Id.* The VE testified that under these limitations, sedentary and un-skilled jobs existed in the region for visual surveillance monitor, 1,250; reduced range of general office clerk positions, 2,475; and production inspector, 2,175. *Id.*

The ALJ then gave the VE a second hypothetical assuming the additional limitation for Plaintiff to lie down for a nap daily "for an unpredictable length of time." (TR 408). The VE testified that such a limitation would not be compatible with competitive employment. *Id.*

### D. *ALJ'S CONCLUSIONS*

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from a "degenerative disc disease of her cervical and lumbar spine, an affective disorder and a rotator cuff tear and degenerative joint disease of her right shoulder, impairments that are severe within the meaning of the Regulations" but that she does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 23, 26). The ALJ found Plaintiff's testimony not to be credible. (TR 27). He determined that Plaintiff had the RFC to perform a limited range of sedentary work. *Id.* Thus, the ALJ concluded that Plaintiff is not eligible for disability. *Id.*

### E. *ANALYSIS*

Plaintiff advances several claims in her Motion for Summary Judgment. Plaintiff's Motion requests a Sentence Four Remand and argues the ALJ's decision is not supported by substantial record evidence because: (1) the ALJ failed to include

---

7. See Subpart E, *supra,* page 9.

Plaintiff's degenerative joint disease in her right shoulder and her rotator cuff tear in the hypothetical and residual functional capacity [RFC]; and (2) the ALJ further failed to include Plaintiff's obesity and inability to stoop and squat in the RFC.[8] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence.[9] The matter is now ready for decision.

### 3. Standard of Review

■■■■ This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. *Brainard v. Secretary of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir.1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir.1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir.1986). Finally, consideration of the whole record does not mean that the ALJ

must mention or comment on each piece of evidence submitted. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Rotator Cuff Tear and Right Shoulder Degenerative Joint Disease

■■■■ Plaintiff argues that the ALJ failed to recognize Plaintiff's right shoulder degenerative joint disease and her rotator cuff tear in his hypothetical or the RFC.[10] Plaintiff adds that her shoulder problem causes problems in her hands and arms as well.[11] Plaintiff argues that the RFC should have included limitations for "no use of the right arm for repetitive griping or fingering, no tasks requiring dexterity more than occasionally, [and] no more than occasional writing."[12] However, the ALJ did find that Plaintiff's rotator cuff tear and degenerative joint disease in her right shoulder were severe. (TR 23). The ALJ's assessed RFC stated that Plaintiff was able to "lift and/or carry no more than ten pounds at a time and occasionally lift or carry articles like docket files, ledgers and small tools.... She can do no over chest level work nor can she do pushing or pulling." (TR 27). The ALJ also put the restrictions of "[n]o over chest level work [and][n]o push/pull maneuvers" in his hypothetical. (TR 407). Plaintiff relies on the findings of Dr. Frederick C. Schreiber regarding Plaintiff's complaints for her right shoulder.[13] The ALJ stated that this doctor was given significant weight in as-

---

8. Plaintiff's Motion for Summary Judgment and Brief filed March 3, 2004 (hereinafter "Plaintiff's Brief"), at pages 3–7.

9. Defendant's Motion for Summary Judgment and Brief filed April 23, 2004 (hereinafter "Defendant's Brief"), at pages 10–17.

10. Plaintiff's Brief at pages 3–5.

11. Plaintiff's Brief at pages 3–4.

12. Plaintiff's Brief at page 4.

13. Plaintiff's Reply to Defendant's Motion for Summary Judgment and Brief filed April 30, 2004 (hereinafter "Plaintiff's Reply"), at pages 1–2.

sessing Plaintiff's RFC because his findings were consistent with the record as a whole. (TR 21). The ALJ did not reject Plaintiff's right shoulder problems and sufficiently provided limitations regarding same in both the RFC and his hypothetical. In *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D.Mich. July 14, 2004) (slip copy), the Sixth Circuit articulated the relationship between a severe impairment and the limitations such an impairment have in relationship to a plaintiff's RFC.

> One does not necessarily establish the other. In this case, for instance, the plaintiff had some vision loss that, under the Secretary's definition, could be found as "severe," but the ALJ reasonably could have concluded that the correction of that vision to 20/25, *see* tr. at 124, did not limit the plaintiff's ability to perform light work.

Similarly in this case, the ALJ reasonably concluded that although, Plaintiff's degenerative joint disease in her right shoulder and torn rotator cuff were serious, her restrictions were only as previously stated. Further, there is no other evidence that this Court is able to locate or that Plaintiff points to support the additional restrictions argued above.

### b. Obesity

■■ Plaintiff argues the ALJ failed to take into account Plaintiff's obesity.[14] This Court recognizes that obesity can cause a person to be disabled, especially when in concert with other factors. *Johnson v. Sec'y of Health and Human Servs.*, 794 F.2d 1106, 1112–14 (6th Cir.1986). Although as Defendant points out in *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987),

[s]ince the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.

However, the ALJ failed to evaluate Plaintiff's obesity at all, although he was aware that Plaintiff had significant weight gain. (TR 23, 24). The ALJ made no findings regarding Plaintiff's obesity. Plaintiff points out that she had a Body Mass Index [BMI] of 31.8 and under SSR 02–01p, such a BMI classifies as obese.

> [I]t specifically notes that "[t]here is no specific level of weight or BMI [body mass index] that equates with a 'severe' or a 'not severe' impairment ... we will do an individualized assessment of the impact of obesity on an individual's functioning." S.S.R. 02–01–P at ¶ 6. The inquiry remains whether impairments in combination are supported by "signs, symptoms, and laboratory findings" that indicate a severe functional impairment. *See id.* at ¶ 7.

*Brimhall v. Barnhart,* 2003 WL 21467510, *14 (W.D.Tenn.2003). Further, in *Brown v. Barnhart,* 325 F.Supp.2d 1265, 1272 (N.D.Ala.2004), the Court found "[o]f significance is the fact that ALJ Munford included cervical degenerative disc disease as a severe impairment but did not consider it in combination with obesity or any other condition. Plaintiff has degenerative disc disease. She has discogenic and degenerative disorders of the back." In the present case, the ALJ found "a degenerative disease of her cervical and lumbar spine," (TR 23, 26), among other severe impairments and made no inquiry into such impairments in combination with

14. Plaintiff's Brief, at pages 11–12.

Plaintiff's obesity as required by the Regulations.

It is clear from the language of section 10.10 and its promulgative history that obesity is a condition that can support a finding of disability. The listing for obesity is quite specific and includes no reference to types of obesity. Section 10.10 reflects a policy decision by the agency that obesity, regardless of type, can be a disabling impairment when it is severe and is accompanied by certain complications.

*Johnson*, 794 F.2d at 1113. It is recommended that the ALJ address Plaintiff's obesity upon remand.

### c. Inability to Stoop and Squat

■ Plaintiff argues that under SSR 83–14 and SSR 96–9p, "a complete inability to stoop would significantly erode the unskilled sedentary occupational base." [15] SSR 83–14 provides in pertinent part:

Two types of bending must be done frequently (from one-third to two-thirds of the time) in most medium, heavy, and very heavy jobs because of the positions of objects to be lifted, the amounts of weights to be moved, and the required repetitions. They are stooping (bending the body downward and forward by bending the spine at the waist) and crouching (bending the body downward and forward by bending both the legs and spine). However, to perform substantially all of the exertional requirements of most sedentary and light jobs, a person would not need to crouch and

would need to stoop only occasionally (from very little up to one-third of the time, depending on the particular job).

SSR 83–14, 1983 WL 31254, *2 (S.S.A. 1983). SSR 96–9p provides as follows, in relevant part:

An ability to stoop occasionally; i.e., from very little up to one third of the time, is required in most unskilled sedentary occupations. A *complete inability to stoop would significantly erode* the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, *but restriction to occasional stooping should, by itself, only minimally erode* the unskilled occupational base of sedentary work. Consultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping.

*See* SSR 96–9p, 61 Fed.Reg. 34478, 34482 (1996)(emphasis added). The ALJ gave significant weight to Dr. Schuchter's findings. (TR 24). Dr. Schuchter found that Plaintiff was not able to stoop.[16] (TR 245). The ALJ failed to address Plaintiff's inability to stoop in the RFC; it is recommended that he do so on remand.

### III. CONCLUSION

For the reasons stated, I respectfully recommend that the court GRANT Plaintiff's Motion for Summary Judgment IN PART, DENY Defendant's Motion for Summary Judgment, and REMAND this case to the Defendant Commissioner for

---

**15.** Plaintiff's Brief at page 7.

**16.** As Defendant points out, Dr. Schuchter did find that Plaintiff could bend. Defendant's Brief at page 15. However, because the doctor found that she could not stoop or squat and arise from squatting, there is evidence to suggest that he did not mean that she could bend in the way that would be required to stoop or squat. In fact, the ALJ included

Plaintiff's inability to squat in his RFC. (TR 27). To squat is "to assume or maintain a position in which the body is supported on the feet and the knees are bent so that the buttocks rest on or near the heels." MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 1141 (10th ed.1998). Therefore, the fact that Dr. Schuchter stated that she could not bend, does not resolve the issue.

further proceedings consistent with this Report.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.